**Adreine D. McALPIN, Plaintiff,**

v.

**NATIONAL SEMICONDUCTOR CORPORATION, Defendant.**

**No. 4:95–CV–480–A.**

United States District Court, N.D. Texas, Fort Worth Division.

April 17, 1996.

Steven Martin Carsey, DeBusk & Carsey, Fort Worth, TX, for Adreine D. McAlpin.

Lori Michelle McNally, Gardere & Wynne, Dallas, TX, for National Semiconductor Corporation.

## MEMORANDUM OPINION AND ORDER

McBRYDE, District Judge.

Came on for consideration the motion of defendant, National Semiconductor Corporation ("NSC"), for summary judgment. Plaintiff, Adreine D. McAlpin ("McAlpin"), has filed a response in opposition, to which NSC has replied.

### I. McAlpin's Complaint

McAlpin alleges that she was employed by NSC on or about March 16, 1992, as a fab room operator, a position which exposed McAlpin to frequent inhalation of several chemical compounds; that on or about April 8, 1994, she was diagnosed with a lung condition or disease known as sarcoidosis, and was given a release to return to work with the restriction that she should avoid direct contact with or inhalation of chemical fumes; and, that on or about April 19, 1994, upon her return to work with her medical release and statement of restrictions, NSC terminated McAlpin's employment. McAlpin further alleges that NSC failed and refused to make any accommodation for her condition of disability, and failed to investigate the extent of her medical limitations. McAlpin claims that NSC's refusal to make reasonable accommodations for her known disability constitutes a violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12117 ("ADA").

### II. NSC's Motion & McAlpin's Response

NSC states that in a case of failure to accommodate, a plaintiff must prove the following essential elements: (1) she has a disability which substantially limits a major life activity; (2) she is otherwise qualified to perform the essential functions of her job; and (3) she was denied reasonable accommodation to her known physical limitations. NSC asserts that it is entitled to summary judgment because McAlpin cannot raise a triable issue of fact which would demonstrate any of these essential issues. NSC further asserts that McAlpin does not have a disability which substantially limits a major life activity, McAlpin is not a qualified individual with a disability, and McAlpin was not denied reasonable accommodation.

McAlpin, in response, contends that she qualifies for protection under the ADA because she was perceived by NSC as being disabled, that she is a qualified individual with a disability within the meaning of the ADA, and that she was denied reasonable accommodation because NSC failed to make any effort to investigate her condition or her ability to work.

### III. Summary Judgment Evidence

Central to the parties' dispute are the following events, as supported by the summary judgment evidence:

On March 3, 1994, McAlpin reported to Nurse Alvarie Sample ("Sample"), the Occupational Health Nurse at NSC, that she was having problems with her lungs and might have a condition known as sarcoidosis. Sample Affidavit ¶¶ 2, 4. In order to determine whether McAlpin's condition was work related, Sample called McAlpin's treating physician to discuss his diagnosis, but the physician refused to speak to Sample about the matter without written authorization and release from McAlpin.[1] Id. ¶ 7. Sample then

---

1. Sample does not specify which doctor she called. It may have been Dr. Gleason, a lung specialist, who had diagnosed McAlpin with sarcoidosis and who had been seeing McAlpin since some point in 1993. McAlpin Deposition, at 69. On the other hand, Sample may have called Dr.

asked McAlpin to sign a medical release form. *Id.* ¶ 8. According to Sample, McAlpin refused to sign the medical release, stating that her medical condition was none of NSC's business. *Id.* In her deposition, McAlpin testified that she remembered Sample asking her to sign such a release, but further testified both that she did and did not refuse to sign the release. *See* McAlpin Deposition, at 102–19. In her affidavit, McAlpin contradicts her earlier testimony, stating that no one at NSC ever asked her for a medical release. McAlpin Affidavit ¶ 9. There is no copy of a signed release in evidence.

On approximately April 5, 1994, McAlpin presented NSC with a note, dated April 4, 1994, from her physician, Dr. Vivar, which stated that "Ms. McAlpin has sarcoidosis and will benefit from avoiding chemical contact of any type in the future." Vasquez Affidavit, Ex. 2A. Edward Vasquez ("Vasquez"), who at the time was Employee Relations Manager for NSC, told McAlpin that she needed to provide NSC with a more specific definition of the chemicals she must avoid. McAlpin returned with another note from Dr. Vivar, dated April 8, 1994, which stated that, "[a]s is true with any kind of lung disease, Mrs. McAlpin should avoid direct contact/or inhalation of chemical fumes." *Id.* Ex. 2B. The note ended, "If you have any further questions please do not hesitate to call me." *Id.*

During the process of trying to make accommodations for McAlpin's lung disease, Vasquez and Sample held several meetings with McAlpin to determine the extent of her medical restrictions and to determine what accommodations could be made for her. Vasquez Affidavit ¶ 12; Sample Affidavit ¶ 11. Vasquez continued to press McAlpin for a more specific statement of the chemicals that she must avoid:

> An absolute prohibition from working around chemicals, no matter why type and at what exposure level would disqualify

Ms. McAlpin from any job in the company because every job required exposure to some sort of chemical to some extent.

> .... I told her that it was her responsibility to get a more specific definition of the chemicals from her physician. Otherwise, the company could not accommodate her restrictions because all of the jobs at NSC involved some exposure to some sort of chemicals. Vasquez Affidavit ¶¶ 8–9.

McAlpin, on the other hand, apparently believed she had fulfilled her responsibility for the matter by providing the two letters from her physician which were dated April 4 and April 8, and felt that NSC should contact her doctor if it needed further clarification as to her restrictions. *See* McAlpin Deposition, at 132, 134, 142, 177–79, 192. There is no evidence that McAlpin actually requested that NSC call her physician.

Based on the restrictions stated by McAlpin's physician, NSC concluded that McAlpin could no longer perform the essential functions of her job because she could not work in the fab room where chemicals were present. Because McAlpin could not perform her job, and because there were no other positions open, NSC terminated McAlpin's employment. Vasquez Affidavit ¶¶ 13–15.

### IV. *Applicable Summary Judgment Principles*

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. The movant may discharge this burden by pointing out the absence of evidence to sup-

---

Vivar, whom McAlpin apparently began seeing on March 4, 1994. *See* McAlpin Affidavit ¶ 10; Defendant's Response, Ex. 5. However, the court thinks it is likely that it was Dr. Gleason whom Sample called. On the form filled out by Sample on March 3, 1994, the date that McAlpin notified NSC of her condition, Dr. Roger Gleason is listed as McAlpin's doctor. Sample Affidavit,

Ex. 3A. Furthermore, on or before March 4, 1994, McAlpin notified Dr. Gleason not to release any information concerning her condition to her employer, Defendant's Response, Ex. 4., thus making it likely that this was the doctor who refused to provide medical information to Sample without written authorization and release from McAlpin.

port one or more essential elements the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256, 106 S.Ct. at 2510, 2514. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). An issue is material only if its resolution could affect the outcome of the action. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Simmons v. Lyons,* 746 F.2d 265, 269 (5th Cir.1984).

The standard for granting a summary judgment is the same as the standard for a directed verdict. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552–53. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita,* 475 U.S. at 597, 106 S.Ct. at 1361.

## V. *Analysis*

### A. *Disability*

The ADA prohibits discrimination "against a qualified individual with a *disability* because of the *disability* of such individual in regard to ... discharge of employees." 42 U.S.C. § 12112(a) (emphasis added). An individual has a disability, as that term is defined by the ADA, if she has a physical or mental impairment that substantially limits one or more of her major life activities, or if she is regarded as having such an impairment. 42 U.S.C. § 12102(2)(A) & (B). Major life activities are those that the average person in the general population can perform with little or no difficulty, such as breathing and working. 29 C.F.R. § 1630.2(i). An impairment substantially limits a major life activity if it prevents an individual from performing that activity, or if it significantly restricts the duration, manner, or condition under which an individual can perform such activity, as compared to ability of the average person in the population to perform the same activity. 29 C.F.R. § 1630.2(j). An individual is not substantially limited in working just because she is unable to perform a particular job for one employer, or because she is unable to perform a specialized job requiring extraordinary skill, prowess, or talent. *Id.* However, an individual is substantially limited in working if the individual is significantly restricted in her ability to perform a class of jobs or a broad range of jobs in various classes, when compared with the ability of the average person with comparable qualifications to perform those same jobs. *Id.* A person is regarded as having an impairment that substantially limits the person's major life activities when other people treat that person as have a substantially limiting impairment. *See* 29 C.F.R. § 1630.2(1)(3).

NSC asserts that McAlpin does not qualify as a person with a disability under the ADA, because she does not have an impairment that substantially limits any of her major life activities. McAlpin does not argue in response that she has such an impairment, but rather insists that she qualifies as disabled because NSC regarded her as having such an impairment.

It is apparent from the summary judgment evidence that NSC understood the notes from McAlpin's doctor to mean that McAlpin could not work around any chemicals.

... Mr. Vasquez and I spoke again by phone and he told me that he had no positions for me because Dr. Vivar's letter was clear that I could not work around any chemicals.

... Later, I spoke [again] with Mr. Vasquez by phone. He told me that the sec-

ond letter still did not say anything specific, and that he still considered that to mean that I could not be exposed to any chemicals....

*     *     *     *     *     *

Vasquez said that it was not his responsibility to contact the doctor to clarify what the restrictions meant, and that as far as he was concerned the doctor's restrictions prevented me from working around any chemical anywhere in the facility....

McAlpin Affidavit ¶¶ 4, 5, 7; *see also* Vasquez Affidavit ¶¶ 8, 9, 13, 15. The summary judgment evidence also reflects that NSC regarded McAlpin's condition, which prevented her from being around chemicals, as one which would prevent McAlpin from working in virtually any job:

Mr. Vasquez told me that any job at the company, even in the office, would involve exposure to chemicals, and that even in the office jobs they were exposed to white-out and toner.... I was upset and asked Mr. Vasquez what I was supposed to do for a job. He told me that I should try to get a disability statement from my doctor to qualify for short-term and long-term disability.

*     *     *     *     *     *

A few days later, I reported back to the NSC offices for my exit interview.... Mr. Vasquez told me that he did not know where I might be able to work, because even at a McDonald's store they had chemicals.

McAlpin Affidavit ¶¶ 4, 8. Although McAlpin has testified that she could perform almost any type of job as long as it does not involve direct exposure to chemicals, evidence also suggests that NSC believed that only a very few, or perhaps no, jobs would not involve such exposure. Therefore, the court is satisfied that McAlpin has presented sufficient summary judgment evidence to raise a genuine issue of fact as to whether NSC regarded her as having an impairment that substantially limited her ability to work, and thus a genuine issue of fact as to whether she qualifies as disabled, as that term is defined by the ADA.

**B.   *Qualified Individual with a Disability***

■   The ADA prohibits discrimination "against a *qualified individual with a disability* because of the disability of such individual in regard to ... discharge of employees." 42 U.S.C. § 12112(a) (emphasis added). A "qualified individual with a disability" means "an individual with a disability who, with or without reasonable accommodation, can *perform the essential functions* of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A two-part analysis is required to determine whether a person with a disability is "qualified":

The first step is to determine if the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc....

The second step is to determine whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation.

29 C.F.R. § 1630.2(m).

In this case, it seems clear that McAlpin satisfies the first step. Before she reported her condition to NSC, she had been employed, apparently satisfactorily, as a fab operator for almost two years. At the second step, however, there is no evidence indicating that McAlpin could have performed the essential functions of the position she held or desired with or without reasonable accommodation.

As for the job McAlpin held, McAlpin herself says that her lung condition precludes her from performing it:

Dr. Vivar had informed me that my recently developed lung condition would be aggravated by on-the-job exposure to chemicals such as solvents, acids, bases and gasses, such as those that I had told him I worked with when I worked in the Fab Room at my employer. I gave the certificate to my supervisor in the Fab Department, Norman, and was sent to see Denise in Personnel Department. I told Denise that my condition was such that I could not work in my old job the Fab Department

any longer because of the chemicals that I was exposed to in that job....

Denise and Norman told me that I had to speak with Edward Vasquez, the head of Human Resources.... I finally spoke with him by phone and told him that I had the condition and could not work in the Fab Room because of the chemical fumes.

McAlpin Affidavit ¶¶ 3–4. In addition, there is no evidence that, with reasonable accommodation, McAlpin could have performed the job she held. Moreover, the evidence shows that McAlpin never requested any accommodation be made for her. *E.g.,* Vasquez Affidavit ¶ 12; McAlpin Deposition, at 179.

As for the job she desired, McAlpin makes only vague references to such a position. McAlpin does not specify what that position was, nor provide evidence that she could have performed the essential functions of that position with or without reasonable accommodation. According to her testimony, McAlpin had only vague notions of other positions she might desire in the company, whether such positions might even exist in the company, and what the nature of such positions would be. *See, e.g.,* McAlpin Deposition, at 140. And, McAlpin testified that she did not request any other specific job. McAlpin Deposition, at 192. In any event, there were no other positions for which McAlpin was qualified in existence at the time of McAlpin's termination. Vasquez Affidavit ¶ 10. And, again, the evidence shows that McAlpin never requested any accommodation be made for her. Vasquez Affidavit ¶ 12; McAlpin Deposition, at 179.

■ McAlpin argues that she could have performed her job, or the position she desired, if NSC had made the reasonable accommodation of contacting her physician to discuss and determine her actual medical condition and to inform her physician of the chemicals to which McAlpin was or was not exposed to during her employment. This argument is flawed, however, because researching the extent of a disability is not the sort of reasonable accommodation envisioned by the statute; rather, reasonable accommodation is action taken by the employer to modify the job or facilities so as to accommo-

date a known disability. *See* 42 U.S.C. § 12111(9).

Even had McAlpin requested an accommodation, the evidence shows that there were no reasonable accommodations that could have been made to enable McAlpin to perform any job at NSC. McAlpin testified that she would not be able to work in any area in which chemicals were present. *See, e.g.,* McAlpin Deposition, at 141. Yet every job at NSC requires exposure to chemicals to some extent. Vasquez Affidavit ¶ 8. Under these circumstances, McAlpin could not have performed the essential functions of any position, held or desired, at NSC.

In sum, the court concludes that McAlpin has failed to adduce sufficient evidence to raise a genuine issue of fact as to whether McAlpin is a "qualified individual with a disability," as that term is defined by the ADA. Because this is an essential element of McAlpin's ADA claim, the court concludes that NSC is entitled to judgment as a matter of law. However, for the sake of completeness, the court proceeds to consider NSC's third argument for summary judgment.

### C. *Reasonable Accommodations*

Discrimination under the ADA is defined to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an ... employee." 42 U.S.C. § 12112(b)(5)(A). The employer and the employee share responsibility for determining the appropriate reasonable accommodation:

> Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability....

\*  \*  \*  \*  \*  \*

However, in some instances neither the individual requesting the accommodation nor the employer can readily identify the

appropriate accommodation. For example, the individual needing the accommodation may not know enough about the equipment used by the employer or the exact nature of the work site to suggest an appropriate accommodation. Likewise, the employer may not know enough about the individual's disability or the limitations that disability would impose on the performance of the job to suggest an appropriate accommodation.

29 C.F.R. Part 1630 App., § 1630.9. When the missing information is of the type that can be provided by only one of the parties, failure to provide the information may lead to a breakdown in the process, and the party withholding the information may be found to have obstructed the process. *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1136 (7th Cir.1996).

In this case, the missing information was the specific identification of those chemicals which McAlpin's condition required that she avoid; without that information, the only reasonable accommodation would entail keeping McAlpin away from all chemicals. McAlpin testified that she told NSC that, despite the wording of her doctor's notes, her doctor had advised her that she was not required to avoid all chemicals, but only the "gases, acids, solvents and bases that were in the fab." [2] McAlpin Deposition, at 132; *accord id.* at 132–36; McAlpin Affidavit ¶¶ 4, 5. NSC repeatedly asked McAlpin to get a more specific definition of the chemicals she must avoid, but McAlpin made no efforts in this regard after presenting NSC with two notes from her physician. And, while McAlpin complains that NSC never contacted her physician for more information, there is no evidence that she requested NSC do so. Moreover, there is no evidence that McAlpin ever signed a medical release form for NSC, despite at least one

request from NSC that she do so.[3] And, given that one of McAlpin's doctors had already refused to release information about McAlpin's condition without written authorization and release from McAlpin, NSC could reasonably have believed that, without such a release, any attempt to contact McAlpin's doctor for more information would have been futile. Although determining a reasonable accommodation is supposed to be an interactive process, an employer does not have the responsibility to go in search of information, such as medical advice, that is uniquely in the hands of the employee, particularly when the employee appears not to have been responsive to requests for further information. *See Beck*, 75 F.3d at 1137. This remains true in this case even though the note from McAlpin's physician invited an inquiry for more details.

In any event, NSC did attempt to make a reasonable accommodation with the limited information it did have concerning McAlpin's condition. Reassignment to another job may be considered a reasonable accommodation if such a position exists and is open. 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(*o*)(2)(ii). However, an employer has no duty whatsoever to create a new job out of whole cloth, or to create a vacancy by transferring another employee out of his job. *See Oswald v. Laroche Chems., Inc.*, 894 F.Supp. 988, 994 (E.D.La.1995); *Howell v. Michelin Tire Corp.*, 860 F.Supp. 1488, 1492 (M.D.Ala.1994). Given McAlpin's notification that she could no longer work in the fab, the only reasonable accommodation was reassignment to another position. NSC searched for other comparable positions for which McAlpin was qualified, but no such positions were open. Vasquez Affidavit ¶ 10; *see* McAlpin Deposition, at 149.

---

**2.** It is curious that her physician could draw this conclusion, since by McAlpin's own testimony, her physician did not even know what chemicals were used in the fab. *See, e.g.,* McAlpin Deposition, at 132.

**3.** To the extent McAlpin's affidavit contradicts this point and thus might be perceived to raise a genuine issue of material fact, it should be disregarded, for she cannot create a genuine issue of

material fact by submitting her affidavit which contradicts, without plausible explanation, her previous testimony. *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 136–37 n. 23 (5th Cir.), cert. denied, 506 U.S. 845, 113 S.Ct. 136, 121 L.Ed.2d 89 (1992); *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 226 (5th Cir.1984); *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 237 (7th Cir. 1991).

The court finds that McAlpin has failed to adduce sufficient evidence to create a genuine issue of fact as to NSC's reasonable accommodation of her disability. Accordingly, the court concludes that NSC is entitled to judgment as a matter of law.

### VI. *Order*

The court ORDERS that NSC's motion for summary judgment be, and is hereby, granted.