**George GERDES, Plaintiff,**

v.

**SWIFT–ECKRICH, INC., d/b/a Armour Swift–Eckrich, Inc., Defendant.**

**No. C 95–3068–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

Dec. 2, 1996.

Jay Shriver of Pappajohn, Shriver, Eide & Nicholas, P.C., Mason City, IA, for Plaintiff.

John S. Schauer and Yvette Caizzi of Seyfarther, Shaw, Fairweather & Geraldson in Chicago, IL, and local counsel Charles W. McManigal of Laird, Heiny, McManigal, Winga, Duffy & Stambaugh in Mason City, IA, for Defendant.

## TABLE OF CONTENTS

I. INTRODUCTION ............................................... 1388

II. STANDARDS FOR SUMMARY JUDGMENT .............................. 1390

III. FINDINGS OF FACT ............................................ 1392
    A. Undisputed Facts ...................................... 1392
    B. Disputed Facts ........................................ 1394

IV. LEGAL ANALYSIS ............................................. 1395
    A. Disability Discrimination Under The ADA ............... 1395
        1. "Regarded as having" a disability .................. 1396
        2. Substantial limitations on major life activities ... 1397
    B. Gerdes's ADA Claim ................................... 1398
        1. Perceived disability in this case .................. 1399
        2. Ability to perform essential functions ............. 1401
        3. Reasonable accommodation and "interactive process" . 1404

V. CONCLUSION ................................................ 1406

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

BENNETT, District Judge.

In this perceived disability case under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.,* the plaintiff, a person with coronary artery disease who is employed as a maintenance supervisor at a meat-processing plant, contends that his employer perceived him to be disabled, because of work restrictions imposed by his doctor, and refused to accommodate his work restrictions. The defendant employer has moved for summary judgment on a number of grounds. The employer asserts entitlement to judgment as a matter of law on lack of a disability or perceived disability, the employee's inability to perform essential functions of his job, and the employer's provision of reasonable accommodation in the form of long-term disability benefits. The employer also contends that any breakdown of the interactive process to arrive at a reasonable accommodation of the employee's work restrictions was the employee's fault. Although the plaintiff employee concedes that he is not disabled within the meaning of the ADA, he asserts genuine issues of material fact as to whether his employer perceived him to be disabled, whether he was able to perform the essential functions of his job, and whether the employer's proffered accommodations were reasonable.

## I. INTRODUCTION

Plaintiff George Gerdes filed his complaint in this matter on September 5, 1995, and an amended and substituted complaint on November 3, 1995, against his employer, Swift–Eckrich, Inc., d/b/a Armour Foods (Arm-

our).[1] The amended complaint asserts claims of violation of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Iowa Civil Rights Act, Iowa Code Ch. 216. Specifically, the amended complaint alleges that Gerdes is a qualified individual with a disability and that Armour failed and refused to provide a reasonable accommodation to Gerdes's known physical limitations resulting from coronary artery disease or otherwise failed to make reasonable effort to continue Gerdes's employment with Armour. Gerdes was, and in fact is again, a maintenance supervisor at Armour's meat-processing plant in Mason City, Iowa. He alleges that he suffers from coronary artery disease and, following medical treatment for that condition and imposition of work restrictions in November of 1994, he was not allowed to return to his job. Gerdes seeks as relief reinstatement,[2] backpay, frontpay, compensatory damages, including damages for other lost earnings and benefits and emotional distress, punitive damages, attorney's fees, expert witness fees, litigation expenses and costs associated with bringing and maintaining this action, and such further relief as the court deems just. Armour answered the amended complaint on November 6, 1995, denying Gerdes's allegations.

This case proceeded through discovery without incident and, on October 1, 1996, the deadline for dispositive motions, Armour moved for summary judgment. First, Armour contends that there are no genuine issues of material fact that Gerdes is not disabled and that Armour did not regard Gerdes as disabled. Next, Armour contends that, even if it regarded Gerdes as disabled, Gerdes could not perform the essential functions of his position as a maintenance supervisor at the Armour plant in Mason City, Iowa. Armour contends that restrictions placed on Gerdes by his doctor precluded him from coming into contact with hazardous environments and chemicals at the Armour plant in the course of his employment as a mainte-

nance supervisor. Furthermore, Armour contends that, even if Gerdes is disabled or was perceived to be disabled, it provided reasonable accommodation to Gerdes's work restrictions by placing him on long-term disability until his doctor modified or clarified his work restrictions such that Armour could return Gerdes to work at his maintenance supervisor job. Armour also contends that it made further reasonable efforts to accommodate Gerdes's work restrictions by investigating other possible positions for him at the plant, but no appropriate positions were available. Finally, Armour contends that any breakdown in the interactive process to determine what accommodations would allow Gerdes to perform his job despite his work restrictions was Gerdes's fault, because neither Gerdes, his attorney, or his doctor responded to Armour's repeated requests for more information about or clarification of Gerdes's work restrictions. Armour points out that in April of 1996, when Gerdes's doctor finally provided some clarification or modification of the work restrictions, Armour promptly reinstated Gerdes to a position as a maintenance supervisor at the Mason City plant.

Gerdes resisted the motion for summary judgment on October 15, 1996. Gerdes contends that summary judgment is inappropriate, because there are genuine issues of material fact apparent from the record. Although Gerdes now concedes that he is not disabled within the meaning of the ADA, he contends that there is a genuine issue of material fact as to whether Armour regarded him as disabled, because Armour's literal reading of his work restrictions, or unsupported interpretation of those restrictions, would have barred him from almost any employment. He also contends that there is a genuine issue of material fact as to his ability to perform the essential functions of his maintenance supervisor job with reasonable accommodations. Specifically, he contends that more limited hours and leave to

---

1. Among other amendments, the amended complaint identified the defendant employer as Swift Eckrich, Inc., d/b/a Armour Swift–Eckrich.

2. Although the claim for relief of reinstatement appears to be moot, because the plaintiff has

already returned to work at Armour's Mason City plant, the question of the appropriateness of any specific relief requested is not before the court on the motion for summary judgment.

use two-way radios to supervise mechanics working in potentially hazardous environments would have met his work restrictions while allowing him to do his job. He also contends that there is a genuine issue of material fact as to the reasonableness of long-term disability leave as an accommodation, because his benefits were only about sixty percent of his usual income and he lost his life insurance benefits during the disability period. Finally, he contends that, for over a year, Armour did nothing to investigate the true nature of his work restrictions in the face of his doctor's assertion that Gerdes should return to work, thus failing to engage in an interactive process to achieve a reasonable accommodation of his work restrictions.

In a reply brief filed October 24, 1996, Armour notes Gerdes's concession that he is not disabled within the meaning of the ADA, and contends further that Armour did not regard Gerdes as disabled, because it did not "erroneously" regard Gerdes as substantially impaired in the major life activity of working on the basis of stereotypes or myths. Instead, Armour contends that it relied on work restrictions imposed by Gerdes's own physician as barring Gerdes from his specific job at the meat-processing plant. However, even if there is a genuine issue of material fact as to perceived disability, Armour contends that it made every reasonable effort to accommodate Gerdes's work restrictions, but that Gerdes chose not to participate in an interactive process to arrive at an appropriate accommodation. In a supplemental statement of facts, Armour asserts that it made at least nine separate requests for additional medical information or a clarification of Gerdes's work restrictions between October of 1994 and April of 1996, but these requests went unanswered or, when answered, the responses did not suggest that the restrictions would not prevent Gerdes from returning to his job. Armour also points out that Gerdes conceded in depositions that he would not be performing his job if he just communicated with mechanics by two-way radio.

Plaintiff George Gerdes is represented in this matter by counsel Jay Shriver of Pappa-john, Shriver, Eide & Nicholas, P.C., in Mason City, Iowa. Defendant Armour is represented counsel John S. Schauer and Yvette Caizzi of Seyfarther, Shaw, Fairweather & Geraldson in Chicago, Illinois, and local counsel Charles W. McManigal of Laird, Heiny, McManigal, Winga, Duffy & Stambaugh in Mason City, Iowa. Neither party requested oral arguments on the motion for summary judgment and the court has not deemed such arguments necessary. Furthermore, this matter is set for jury trial on January 6, 1997, so that prompt disposition of the motion for summary judgment is in order.

## II. STANDARDS FOR SUMMARY JUDGMENT

The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini*, 900 F.2d at 1238 (quoting *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2554–55); *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir.1992).

The standard for granting summary judgment is well established. Rule 56 of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

\*    \*    \*    \*    \*    \*

(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Reliance Ins. Co. v. Shenandoah South, Inc.,* 81 F.3d 789, 791 (8th Cir.1996); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir. 1993); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir. 1990); *Wabun–Inini,* 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[3] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here Gerdes, and give Gerdes the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Rifkin v. McDonnell Douglas Corp.,* 78 F.3d 1277, 1280 (8th Cir.1996); *Marts v. Xerox, Inc.,* 77 F.3d 1109, 1112 (8th Cir.1996); *Munz,* 28 F.3d at 796; *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

Procedurally, the moving party, here Armour, bears "the initial responsibility of informing the district court of the basis for [its] motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). Armour is not required by Rule 56 to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

"When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Gerdes is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Prods., Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison,* 28 F.3d at 66.

In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment

---

3. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel,* 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel*, 953 F.2d at 396 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552). If Gerdes fails to make a sufficient showing of an essential element of a claim with respect to which he has the burden of proof, then Armour is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53; *Woodsmith*, 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Burk*, 948 F.2d at 492; *Woodsmith*, 904 F.2d at 1247.

The Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Hardin v. Hussmann Corp.*, 45 F.3d 262 (8th Cir.1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand*, 827 F.2d at 364). Summary judgment is appropriate only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson*, 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch*, 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson*, 931 F.2d at 1244); *Crawford*, 37 F.3d at 1341 (quoting *Johnson*, 931 F.2d at 1244). The court reasoned that "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should

not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford*, 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *Johnson*, 931 F.2d at 1244; *accord Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford*, 37 F.3d at 1341); *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford*, 37 F.3d at 1341). However, the Eighth Circuit Court of Appeals has also observed that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 365 (8th Cir.1994)). The court now turns to what the record and the contentions of the parties reveal to be the disputed and undisputed facts in this case.

## III. FINDINGS OF FACT

### A. Undisputed Facts

Plaintiff George Gerdes, who suffers from coronary artery disease, was, and is again, employed as a maintenance supervisor at defendant Armour's Mason City meat-processing plant. Gerdes began working for Armour as a mechanical supervisor in March of 1978, and he has been a maintenance supervisor since early 1981. Gerdes's job involves evaluation of equipment, scheduling of maintenance, supervision of maintenance and repair crews, and ordering of parts and equipment.

At the Mason City plant, Armour packages a variety of hot dogs, semi-dry sausages, hams, and bacon. The packaging process at the plant involves grinding or blending of food products, stuffing casings, smoking or cooking products, packaging products, and storage of products in freezers or refrigerators prior to shipment out of the plant warehouse to distribution centers or retail establishments. The storage facilities expose

some workers to temperatures as low as −10° F, as well as wide temperature variations moving to and from freezer or refrigeration facilities or while effecting repairs in freezer or refrigerated areas. The packaging process also involves use of numerous chemicals, including liquid smoke for smoking products, anhydrous ammonia for refrigeration, process equipment, and condensers, and various caustics and cleaners. The plant also exposes some workers to welding fumes from the shop area or areas in the main plant where repairs are being effected. Equipment repairs and maintenance may also expose some workers to any of the chemicals identified above.

Gerdes underwent coronary bypass surgery in 1991, but the medical episode that has provoked this lawsuit occurred in 1994. In September of 1994, Gerdes was hospitalized with chest pains. As a result, he underwent an angioplasty to reopen one of his coronary artery bypasses. Gerdes was released to return to work, but with work restrictions imposed by his treating physician, Dr. Cookman. The restrictions included limiting Gerdes to a forty hour work week.

In October of 1994, Armour's Manager of Human Resources, Daryl Johnson, wrote to Dr. Cookman for a clarification of Gerdes's work restrictions. Dr. Cookman responded on November 8, 1994. Plaintiff's Exhibit G. In his response to Johnson's inquiry, Dr. Cookman stated, "As I indicated to you in a letter of September 16, 1994, I strongly encouraged [Gerdes] to continue working if possible; but at the same time, I very strongly urged him not to work more than forty hours a week.... I consider this a life-long restriction. The only other activities I think Mr. Gerdes should refrain from are excessive lifting and exposure to hazardous work environments such as exhaust fumes, wide temperature variations, and other environmental hazards." *Id.* On November 14, 1994, Johnson told Gerdes he would have to review Dr. Cookman's work restrictions before allowing Gerdes to return to work.

Johnson consulted with Alan Van Devanter, the Plant Manager of the Mason City plant. Johnson and Van Devanter discussed Gerdes's ability to work within the plant in light of the potential exposure to liquid smoke, anhydrous ammonia, welding fumes, exhaust fumes, or any of the various caustics and chemicals used in waste treatment and cleaning. They concluded that, in light of these conditions and Dr. Cookman's restrictions, Gerdes could not then return to work at the Mason City plant. Johnson informed Gerdes of this decision by telephone on November 19, 1994, and suggested that Gerdes apply for long-term disability benefits. In a subsequent meeting between Gerdes and Johnson on November 23, 1994, Johnson reiterated that Gerdes could not return to work at the plant under Dr. Cookman's restrictions. Johnson and Van Devanter considered other possible positions for Gerdes at the plant, although they did not discuss this matter with Gerdes or notify him that they had considered other positions. Johnson and Van Devanter concluded that the only positions at the plant that would fit Gerdes's work restrictions were positions as a security guard or warehouseman, because these positions were outside the plant environment. However, no such positions were then available.

In early 1995, Paula Seydel, Employee Benefits Coordinator for the Mason City plant, wrote to Dr. Cookman requesting a clarification of Gerdes's ability to work within the plant environment. Dr. Cookman responded on April 3, 1995, stating that Gerdes was restricted "to a forty hour work week" and that he "should refrain from exposure to extreme variations in temperature, exposure to noxious fumes such as ammonia, welding equipment, and other forms of noxious agents. Also, his work environment should be reasonably free of dust and other potentially harmful materials." Defendant's Exhibit 19. On July 13, 1995, Johnson wrote to Gerdes requesting an update of his medical condition and work restrictions. However, Gerdes's attorney responded that Gerdes had already provided this information and would not do so again. Defendant's Exhibit 9.

On February 26, 1996, Johnson again wrote Gerdes requesting medical information. Defendant's Exhibit 10. Johnson re-

stated the restrictions imposed by Dr. Cookman and stated that "[w]ithout more from Dr. Cookman or others, we must interpret these restrictions literally," but Johnson also expressed a continued desire to assess Gerdes's ability to work and to discuss reasonable accommodation. *Id.* In response to this letter, on April 8, 1996, Dr. Cookman wrote to Johnson, clarifying his work restrictions for Gerdes. Defendant's Exhibit 12. Dr. Cookman stated that the forty-hour work week restriction "was and remains my principle [sic] recommendation with respect to Mr. Gerdes' work activities." *Id.* However, Dr. Cookman also clarified this and his other restrictions as follows:

I did not say [in the letter of November 8, 1994], nor do I say now, that Mr. Gerdes can never, ever lift anything heavy or he can never be exposed to cold or an occasional fume. My only recommendation was that this not be a principle [sic] part of his work environment. Therefore, I have to say that your letter of February 26, 1996, directed to Mr. Gerdes has and continues to misinterpret my recommendations regarding Mr. Gerdes and his employment at Armour....

... All my recommendations regarding Mr. Gerdes' number of hours worked as well as exposure to other environmental hazards, have to be given a reasonable interpretation. I certainly think it is acceptable for him to work in the area of 40–45 hours, but I would not want him to work a 50, 60, or 70 hour work-week....

My recommendations with respect to refraining from excessive lifting and exposure to hazardous work environments should have also been given a reasonable interpretation. I am certainly aware that there is an occasional exposure to fumes and temperature variations working in a packing plant, and therefore my recommendation was that he should avoid prolonged, excessive or continuous exposure to these environmental hazards. The wearing of a mask and appropriate clothing can minimize certain of these hazards in the work environment.

Regarding the lifting restriction. Certainly, I realize he may have to lift on an occasion, but again, it is a recommendation that should be taken reasonably. My main concern is that he not be required to perform continuous or repetitive heavy lifting. The definition of heavy is extremely variable and virtually impossible to quantitate [sic] in terms of a pound amount. Therefore, again a certain amount of common sense has to be taken into these recommendations. After discussing this with Mr. Gerdes, I really do not perceive this as [a] big problem since he advises me he is rarely involved in heavy lifting activities in his position as a maintenance supervisor.

*Id.* After receiving Dr. Cookman's letter, Johnson telephoned Gerdes and told him that a maintenance supervisor position was open on the third shift and Johnson asked Gerdes to meet with Johnson and Van Devanter about a return to work. Johnson and Van Devanter concluded that Armour could accommodate the clarified restrictions and Gerdes returned to work as a maintenance supervisor in April of 1996.

### B.  Disputed Facts

The parties assert that the following facts are in dispute. The question to be addressed below, in the court's legal analysis, is whether these disputes of fact are both genuine and material under the governing law, such that they preclude summary judgment on Gerdes's claims. *See, e.g., Fed.R.Civ.P.* 56(c); *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

Gerdes asserts there is a genuine issue of material fact as to the extent to which Dr. Cookman's restrictions should have prevented him from working at the Mason City plant. Gerdes asserts that although Dr. Cookman, Gerdes's personal physician, Dr. Baker, and the company's doctor, Dr. Tagett, all recommended some restrictions on Gerdes's hours, all recommended that Gerdes be allowed to return to work. Thus, he asserts that Armour's strict reading of Dr. Cookman's restrictions was a ploy to prevent him from working, even though he contends Armour had access to Dr. Cookman's medical records at all times. Gerdes contends that

there is a genuine issue of material fact as to perceived disability and failure to accommodate a disability, because the company's own doctors were qualified to evaluate Dr. Cookman's restrictions and to determine that Gerdes could work at the Mason City plant. Gerdes also asserts that Armour refused his requests to return to work and that Armour made only very limited efforts to discuss his restrictions with him.

Gerdes contends that the job description developed by Armour for the purposes of his employment rights hearings and for asking Dr. Cookman for clarifications were prepared with no input from Gerdes. Although Gerdes does not contend that the job description is erroneous, he seems to contend that preparing the job description without his input suggests a failure to accommodate. He also contends that the involvement of Armour personnel in hearings before the Mason City Human Rights Commission should have provided those personnel with sufficient information to determine that Gerdes could return to work.

Gerdes also contends that a reasonable accommodation of his perceived disability would have been to allow him to use two-way radios to supervise maintenance that involved exposure to hazardous environments. He contends that with this reasonable accommodation, as well as with a reasonable accommodation to the length of his work week, he was qualified for his job as a maintenance supervisor. He contends that two positions for maintenance supervisors were open in early 1995, which would have allowed his return to work. He also contends that there is a genuine issue of material fact as to the reasonableness of long-term disability benefits as an accommodation, because those benefits amounted to only about sixty percent of his working income and he was not entitled to life insurance benefits while on disability.

### IV. LEGAL ANALYSIS

#### (including some further findings of fact)

■ Gerdes has brought his disability discrimination claims under both federal and state law. However, neither party has distinguished in any way the legal standards or results under federal and state law in this case. The court has recently articulated the standards for a disability discrimination claim under the Iowa Civil Rights Act, Iowa Code Ch. 216, in *Muller v. Hotsy Corp.*, 917 F.Supp. 1389, 1413–17 (N.D.Iowa 1996). The court finds that it suffices to say here that under Iowa law, as under the ADA, an employer must reasonably accommodate an employee's disability and an employee must demonstrate that he or she is able " 'to perform the job in a reasonably competent and satisfactory manner given reasonable accommodation by the employer.' " *Muller*, 917 F.Supp. at 1415 (quoting *Henkel Corp. v. Iowa Civil Rights Comm'n*, 471 N.W.2d 806, 810 (1991)); *see also Boelman v. Manson State Bank*, 522 N.W.2d 73, 80 (1994) (describing the allocation of burdens of proof on "reasonable accommodation" under Iowa law). Thus, if genuine issues of material fact preclude summary judgment on Gerdes's federal claim, premised on the failure to provide "reasonable accommodation," those genuine issues of material fact will also suffice to preclude summary judgment on Gerdes's state-law claim. Furthermore, because Gerdes has not asserted, and the court does not find, that differing legal standards under state law will preclude summary judgment on the state claim even if summary judgment is appropriate on the federal claim, should the record fail to generate genuine issues of material fact, and the court concludes that summary judgment is appropriate on the ADA claim, summary judgment will also be appropriate on the claim based on Iowa law.

#### A. Disability Discrimination Under The ADA

The court has previously engaged in extensive discussions of the origins of the ADA. *See Muller*, 917 F.Supp. at 1402–05; *Heather K. v. City of Mallard, Iowa*, 887 F.Supp. 1249, 1263–66 (N.D.Iowa 1995); *Hutchinson v. United Parcel Serv., Inc.*, 883 F.Supp. 379, 387–90 (N.D.Iowa 1995); *Fink v. Kitzman*, 881 F.Supp. 1347, 1368–71 (N.D.Iowa 1995). Because the court most recently reiterated this important background to an ADA claim just two months ago in *Valentine v. American Home Shield Corp.*, 939 F.Supp. 1376, 1388–91 (N.D.Iowa 1996), it will not do so

again here. Thus, the court turns directly to the nature of the prohibition on disability discrimination under the ADA.

Under the ADA, "disability" is broadly defined to include not only "a physical or mental impairment that substantially limits one or more of the major life activities of [the disabled] individual," but also "ha[ving] a record of such an impairment," or the state of "being regarded as having such an impairment." 42 U.S.C. §§ 12102(2)(A), (B), (C); *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1318 (8th Cir.1996); *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir.1995); *accord Runnebaum v. Nationsbank of Md., N.A.;* 95 F.3d 1285, 1289 (4th Cir.1996); *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 725 (5th Cir.1995); *Vande Zande v. State of Wis. Dep't of Admin.,* 44 F.3d 538, 541 (7th Cir.1995); *Bolton v. Scrivner, Inc.,* 36 F.3d 939, 942 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995); *Chandler v. City of Dallas,* 2 F.3d 1385, 1391 (5th Cir.1993), *cert. denied,* 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994) ("disability" under ADA means a condition that "substantially limits" major life activity). Gerdes now concedes that his coronary artery disease and attendant work restrictions do not mean that he had a "disability" within the meaning of the ADA.[4] Rather, he contends that he falls within the last definition of a disabled person under the ADA, because Armour "regarded [him] as having such an impairment." 42 U.S.C. § 12102(2)(C).

### 1. *"Regarded as having" a disability*

Two recent decisions of the Eighth Circuit Court of Appeals touching on the "regarded as having" prong of ADA protection are illuminating on the question of whether summary judgment can be granted in this case. In *Wooten v. Farmland Foods,* 58 F.3d 382 (8th Cir.1995), the Eighth Circuit Court of Appeals wrote,

> Read in conjunction with subsection (A), subsection (C) prescribes that a person is

considered disabled for purposes of the ADA if that person is "regarded as having" an impairment that "substantially limits" a "major life activit[y]." 42 U.S.C. § 12102(2)(C). The limiting adjectives "substantially" and "major" indicate that the perceived "impairment must be a significant one." *Byrne v. Board of Educ., Sch. of West Allis,* 979 F.2d 560, 564 (7th Cir.1992). A person is "regarded as having" an impairment that substantially limits the person's major life activities when other people treat that person as having a substantially limiting impairment. *See* 29 C.F.R. § 1630.2(*l*)(3). The focus is on the impairment's effect upon the attitudes of others. *Byrne,* 979 F.2d at 566. This provision is intended to combat the effects of "archaic attitudes," erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities. *See School Bd. of Nassau County v. Arline,* 480 U.S. 273, 279 & 285, 107 S.Ct. 1123, 1126 & 1129, 94 L.Ed.2d 307 (1987).

*Wooten,* 58 F.3d at 385. Still more recently, the Eighth Circuit Court of Appeals has referred to the applicable EEOC regulations for guidance on what constitutes being "regarded as having" an impairment:

> [The EEOC regulations] provide as follows:
>
> *(l) Is regarded as having such an impairment* means:
>
> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has none of the impairments defined.... [above] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(*l*)(1–3).

---

4. In *Aucutt,* the plaintiff was unable to present evidence that his coronary artery disease substantially limited any major life activity. *Aucutt,* 85 F.3d at 1318–19. Gerdes simply concedes

this point, resting his whole argument on the alternative ground asserted by the plaintiff in *Aucutt,* perceived disability. *Id.* at 1319–20.

*Aucutt,* 85 F.3d at 1319–20; *accord Runneb-aum,* 95 F.3d at 1289 ("The EEOC defines the term 'regarded as having [a disability]' to include persons who have 'a physical or mental impairment that substantially limits major life activities only as a result of the attitudes *of others* toward such impairment,'" quoting 29 C.F.R. § 1630.2(a)(2), with emphasis added by that court). Thus, to prevail on his perceived disability claim, Gerdes must first show, or show that there is a genuine issue of material fact, that Armour perceived his coronary artery disease and work restrictions as "substantially limit[ing] one or more of [his] major life activities." *See* 42 U.S.C. § 12102(2)(C); *Aucutt,* 85 F.3d at 1319–20; *Wooten,* 58 F.3d at 385.

### 2. Substantial limitations on major life activities

■ In seeking further definition of the term "substantially limits" under the ADA, the Eighth Circuit Court of Appeals looked to the regulations implementing the ADA:

[T]he EEOC regulations state that the following factors should be considered in determining whether an individual is substantially limited in a major life activity: (i) the nature and severity of the impairment, (ii) its duration or expected duration, and (iii) its actual or expected long-term impact. 29 C.F.R. § 1630.2(j)(2).

*Aucutt,* 85 F.3d at 1319; *accord Cook v. State of R.I. Dep't of Mental Health, Retardation, & Hosps.,* 10 F.3d 17, 25 n. 10 (1st Cir.1993) (finding that EEOC regulations "indicate that the question of whether an impairment is substantially limiting turns on '(1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the [actual or expected] permanent or long-term impact ... of, or resulting from, the impairment,'" quoting 29 C.F.R. § 1630, App. at 403 (1992)). ADA regulations, as well as ADA interpretive guidance, make clear that temporary, minor injuries do not "substantially limit" a person's major life activities. 29 C.F.R. § 1630.2(j), 29 C.F.R. Pt. 1630 App. § 1630.2(j).

This court has applied this "substantially limits" a "major life activity" requirement in a number of cases under the ADA. *See, e.g., Sicard v. City of Sioux City, IA,* 950 F.Supp.

1420, 1439 (N.D.Iowa 1996) (considering whether the plaintiff's uncorrected myopia substantially limited any major life activities such that the plaintiff was disabled within the meaning of the ADA); *Muller,* 917 F.Supp. at 1411–12 (considering whether a person with spinal injury that was temporary nonetheless perceived by his employer as having a disability that substantially limited his major life activity of working); *Hutchinson,* 883 F.Supp. at 395–96 (considering whether a person with shoulder and back injuries was substantially limited in any major life activity); *Fink,* 881 F.Supp. at 1376–77 (considering whether a person with carpal tunnel syndrome was substantially limited in a major life activity).

The ADA does not define "major life activities," so the Eighth Circuit Court of Appeals has been guided by the definition provided in 29 C.F.R. § 1630.2 of the EEOC regulations on implementation of Title I of the ADA. *Aucutt,* 85 F.3d at 1319.

As defined in 29 C.F.R. § 1630.2(i), the phrase "major life activities" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The regulations further provide that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Rather, a person claiming a disability must show that the impairment "significantly restrict[s] [his or her] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Id.; see also Bolton v. Scrivner, Inc.,* 36 F.3d 939, 942–44 (10th Cir.1994) *(Bolton )* (work-related injury preventing employee from performing his job as order selector in grocery warehouse was not substantial limitation in major life activity of working, as required for unlawful discharge claim under ADA, absent evidence showing restriction in ability to perform class of jobs or broad range of jobs in various classes),

*cert. denied,* —— U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995).

*Aucutt,* 85 F.3d at 1319.

█ Similarly, in *Webb,* the Eighth Circuit Court of Appeals, having noted that "work" is a major life activity under the EEOC regulations, 29 C.F.R. § 1630.2(i), concluded that "[a] person is substantially limited in the major life activity of working if she is 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.'" *Webb,* 94 F.3d at 487 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Although the court in *Wooten* also found that "working" was a major life activity, the court then found that "working" does not mean working at a particular job of that person's choice. *Wooten,* 58 F.3d at 386. Furthermore, the court held that a person perceived as having "an impairment that disqualifies a person from only a narrow range of jobs is not considered [by the employer as having] a substantially limiting one." *Id.* (quoting *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 723 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995)); *see also Jasany v. United States Postal Serv.,* 755 F.2d 1244, 1249 n. 3 (6th Cir.1985) (the court concluded that the employer had not regarded the employee as handicapped because his eyesight prevented his driving, because an impairment "that affects only a narrow range of jobs can be regarded either as not reaching a major life activity or as not substantially limiting one."). Thus, an impairment or condition that affects "only a narrow range of jobs" is not considered as reaching a major life activity nor as substantially limiting one. *See Wooten,* 58 F.3d at 386; *Chandler,* 2 F.3d at 1392 (also quoting *Jasany,* 755 F.2d at 1249 n. 3).

█ However, "[u]nder this broad definition of substantial limitation, an ADA plaintiff need not demonstrate that her impairment restricts her ability to perform all jobs. Rather, as the EEOC's interpretive guide to the Act illustrates, an individual is disabled when her impairment merely prevents performance of a certain class of jobs." *Webb,* 94 F.3d at 487 (citing 29 C.F.R.

§ 1630.2(j)(3)(ii)). Furthermore, an employer's belief that an employee is unable to perform one task with an adequate safety margin or that an employee can work in positions other than the one formerly occupied despite his impairment does not establish that the employer regards the employee as having a substantial limitation on the employee's ability to work in general. *Chandler,* 2 F.3d at 1392–93.

This court has found certain alleged disabilities did not meet the requirements of substantially limiting the plaintiff in a major life activity. *See, e.g., Hutchinson,* 883 F.Supp. at 395–96 (back and shoulder injuries were not minor, but were temporary, and any remaining impairment was admittedly only slight, thus plaintiff was not disqualified from a wide range of jobs, and had failed to demonstrate substantial limitations in any other major life activity); *Fink,* 881 F.Supp. at 1376–77 (plaintiff with carpal tunnel syndrome was restricted only in lifting, but was not substantially limited in any other way, and the lifting restriction did not substantially limit any major life activity or even impair plaintiff's job performance); *Schwarz v. Northwest Iowa Community College,* 881 F.Supp. 1323, 1343–45 (N.D.Iowa 1995) (applying Iowa disability discrimination law, the court held that alleged "night blindness," although it impaired the major life activity of seeing, did not limit the plaintiff in any significant way from obtaining satisfactory employment or disqualify her from a wide range of jobs); *and compare Sicard,* 950 F.Supp. at 1439 (the plaintiff generated genuine issues of material fact precluding summary judgment as to disability within the meaning of the ADA based on his uncorrected myopia); *Muller,* 917 F.Supp. at 1412 (in a perceived disability case, the plaintiff generated a genuine issue of material fact precluding summary judgment as to whether his employer perceived him to be substantially limited in the major life activity of working because of his back injuries).

### B. Gerdes's ADA Claim

Gerdes asserts that, although he was not disabled, he was perceived as disabled by his

employer. He further asserts that his employer failed to accommodate his perceived disability. Armour has moved for summary judgment on the grounds that it did not perceive Gerdes to be disabled, Gerdes was not qualified for his job owing to the work restrictions imposed by Gerdes's physician, and, even if Armour perceived Gerdes to be disabled, Armour either provided reasonable accommodation in the form of long-term disability benefits, or Gerdes was responsible for the breakdown of the interactive process that should have led to the determination of a reasonable accommodation. The court will consider these arguments in turn.

### 1. Perceived disability in this case ·

The Eighth Circuit Court of Appeals has twice recently granted summary judgment in perceived disability cases under the ADA when the plaintiff failed to generate evidence creating a genuine issue·of material fact as to the employer's perception of the necessary impairment. In *Aucutt,* the plaintiff employee asserted that summary judgment had been granted improperly on his perceived disability claim in the face of evidence that the employer was aware of his medical problems and his inability to perform certain aspects of his job, as well as his request for a specific accommodation. *Aucutt,* 85 F.3d at 1319. However, the Eighth Circuit Court of Appeals found that "[t]he mere fact that [the employer] had such knowledge, however, does not show that [the employer] regarded [the plaintiff] as having a disabling impairment." *Id.* The court then found that the plaintiff "ha[d] not brought forth any [other] evidence suggesting that [the employer] perceived or treated [the employee] as having a substantially limiting impairment" and "[i]n the absence of such evidence, the fact that [the employer] was aware of his medical problems is insufficient to establish that [the employer] 'regarded' him as disabled under 42 U.S.C. § 12102(2)." *Id.* at 1320. The court therefore held that the plaintiff had failed to make a *prima facie* case of disability discrimination and summary judgment in the employer's favor had properly been granted by the district court. *Id.* Here, Armour's awareness of Gerdes's medical condition and work restrictions is also insufficient alone to

generate a genuine issue of material fact as to perceived disability.

■ Although Gerdes has attempted to generate a genuine issue of material fact as to perceived disability by asserting that Armour's interpretation of his work restrictions would have precluded him from almost any job, and thus Armour's interpretation indicates that Armour perceived him to be substantially limited in the major life activity of working, the court finds the facts generated here are on all fours with facts the Eighth Circuit Court of Appeals in *Wooten* found insufficient to preclude summary judgment. In *Wooten,*

[The plaintiff] attempted to raise a fact question on this issue by offering evidence that Farmland Foods' nurse understood that his work restrictions were permanent and his own statement that he was informed he was being discharged because of his disability. We conclude that this evidence is insufficient to create a material issue of fact with regard to whether Wooten was "regarded as having" a disability within the meaning of the ADA.

*The evidence bearing on Farmland Foods' perception of Wooten's impairment indicates that its perception was not based upon speculation, stereotype, or myth, but upon a doctor's written restriction of Wooten's physical abilities.* The December 1992 doctor's note gave no indication that Wooten's major life activities were substantially limited but indicated that Wooten was restricted to light duty work with no meat products and no work in a cold environment, work which was not currently available at Farmland Foods. *Even if the nurse at Farmland Foods or Wooten's supervisors believed that his restrictions were permanent, restrictions against working with meat products in a cold environment would not substantially limit Wooten's major life activities....* Wooten's impairments, whether regarded as permanent or temporary, only appeared to prevent him from performing a narrow range of meatpacking jobs....

... Farmland Foods' decision to terminate Wooten based upon the physical re-

strictions imposed by his doctor, when no jobs accommodating those restrictions were currently available, does not indicate that Farmland Foods regarded Wooten as having a substantially limiting impairment. *Wooten,* 58 F.3d at 386.

Here, Gerdes's restrictions, as stated by his doctor, were, if anything, more severe than the plaintiff's in *Wooten.* Gerdes was restricted from working more than forty hours per week and the doctor also stated that Gerdes "should refrain from excessive lifting and exposure to hazardous work environments such as exhaust fumes, wide temperature variations, and other environmental hazards." However, the additional restrictions in Gerdes's case are also unique to conditions at the meat-processing plant, as were the restrictions imposed on Wooten. Thus, avoidance of any of these factors would not substantially limit a person from performing more than a narrow range of jobs, because few jobs involve the specific environmental hazards present at Armour. *Wooten,* 58 F.3d at 386.[5] Furthermore, as in *Wooten,* Armour's perceptions of Gerdes's limitations were not based on "speculation, stereotype, or myth, but upon a doctor's written restriction of [Gerdes's] physical abilities." *Id.* The evil the perceived disability provision of the ADA was intended to prohibit therefore is not present here. *Id.* at 385 ("This provision is intended to combat the effects of 'archaic attitudes,' erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities." citing *Arline,* 480 U.S. at 279 & 285, 107 S.Ct. at 1126–27 & 1129–30). Nor would Armour's assumption that the restrictions were permanent, in the absence of any other clarification, generate a genuine issue of material fact as to perceived disability. *Id.* Finally, the undisputed record reveals that

Armour executives specifically considered other jobs for Gerdes at the Mason City plant that would not involve his exposure to the forbidden conditions, but none were then available.[6] Thus, Armour undisputably did not consider Gerdes barred from all jobs and specifically attempted to find a job for him that complied with his work restrictions. *Compare id.* at 386 ("Farmland Foods' decision to terminate Wooten based upon physical restrictions imposed by his doctor, when no jobs accommodating those restrictions were currently available, does not indicate that Farmland Foods regarded Wooten as having a substantially limiting impairment.").

The inadequate evidence generated in *Aucutt, Wooten,* and this case is to be contrasted with the evidence found by the Ninth Circuit Court of Appeals to be sufficient to generate a genuine issue of material fact as to perceived disability in *Holihan v. Lucky Stores, Inc.,* 87 F.3d 362 (9th Cir.1996). In *Holihan,* the court found the following:

> Lucky called Holihan into two separate meetings to discuss his aberrational behavior. At one of these meetings, Lucky District Manager Church asked Holihan if he was having any "problems;" at the other, Church strongly encouraged Holihan to seek counseling through Lucky's [Employee. Assistance Program]. Lucky also received several doctors' reports diagnosing Holihan with depression, anxiety and stress, including the reports of Drs. Strickler and Cramer. From these facts, a reasonable jury could infer that Lucky regarded Holihan as suffering from a disabling mental condition that substantially limited his ability to work.

> On the other hand, the record also contains facts which might lead a trier of fact

---

5. Gerdes makes much of Armour's interpretation of the lifting restriction as not allowing lifting of objects over ten pounds as establishing that he was perceived as precluded from almost any job. However, Armour's interpretation of the doctor's instructions was reasonable, particularly when Gerdes failed to produce any clarification of that limitation. Furthermore, a lifting restriction to ten pounds still does not disqualify a person from more than a narrow range of jobs.

6. Gerdes asserts that he was never informed of Armour executives' consideration of any other positions for him. Even assuming this to be true, that fact does not generate a genuine issue of material fact as to whether Armour executives actually considered such other positions for Gerdes. There is no evidence suggesting or demonstrating that the executives never considered such an alternative, or that Gerdes asserted that they should consider other positions for him, but they refused to do so.

to conclude that Lucky did not regard Holihan as disabled.

Our obligation in reviewing a grant of summary judgment is to view the facts in the light most favorable to the nonmoving party. So viewed, the facts here create a genuine issue of material fact as to whether Lucky regarded Holihan as disabled within the meaning of section 12102(2)(C) of the ADA.

*Holihan*, 366–67 (footnote omitted). Thus, in *Holihan*, more than simple awareness of a medical condition that might affect a particular job was presented by the evidence. Instead, the employer was aware of a condition that would or could substantially impair the plaintiff's ability to work at any job.

Also plainly dissimilar is the evidence before the Fourth Circuit Court of Appeals in *Runnebaum*, in which the employer's reaction to the information it had about the employee's medical condition suggested that the employer regarded the employee as substantially limited from any job:

Runnebaum, though asymptomatic, has forecast sufficient evidence here to qualify under 42 U.S.C. § 12102(2)(C), which protects those who are *regarded* as having a disability. Bank employees knew Runnebaum was HIV-positive and knew he was taking AZT to treat the condition. Upon learning of Runnebaum's condition, a bank supervisor, Michael Brown, felt "panicky" and "uncontrolled" and believed death might be imminent for Runnebaum. This is enough to show at the summary judgment stage that the bank perceived Runnebaum as having an impairment that substantially limits a major life activity.

*Runnebaum*, 95 F.3d at 1290 (footnotes omitted; emphasis in the original). Thus, in *Runnebaum*, unlike this case and *Wooten*, the employer's reaction was not based upon any restrictions imposed by the employee's treating physician, but upon the employer's reactions to what the Eighth Circuit Court of Appeals in *Wooten* called "myths" and "stereotypes." *Wooten*, 58 F.3d at 385.

The evidence here should also be contrasted with this court's own prior decision in *Muller*, in which this court held that a plaintiff under the ADA had generated a genuine issue of material fact as to perceived disability:

[A co-worker] claimed that [the plant manager] refused to let [the plaintiff] complete any of the physical work and reprimanded [the employee] for attempting to do so. Thus, the record reveals [the manager] perceived [the employee] as being precluded from performing light work, which, in turn, arguably precluded [the employee] from performing a variety of jobs, as opposed to a "narrow range" of jobs. *Cf. Wooten*, 58 F.3d at 386. Because the court finds there is at least a material question of fact as to whether [the manager] regarded [the employee] as "substantially limited" in his ability to work, the court finds the facts in *Wooten* are distinguishable from those in this case.

*Muller*, 917 F.Supp. at 1412 (citations to the record omitted). Thus, in *Muller*, there was no evidence that the employer was simply acting upon a doctor's specific restrictions as barring an employee from a particular job, as in *Wooten* and this case. Instead, there was evidence suggesting that the employer was acting upon the employer's own perceptions of the employee's limitations as barring the employee from a variety of jobs. *Id.*

Therefore, in light of significant similarities, and no significant dissimilarities, to the inadequate evidence presented in *Aucutt* and *Wooten*, the court concludes that Gerdes has failed to generate a genuine issue of material fact that Armour regarded him as disabled, that is, substantially limited in the major life activity of working. On this ground alone, Armour is entitled to summary judgment on Gerdes's disability discrimination claims.

#### 2. *Ability to perform essential functions*

Assuming, contrary to the court's conclusion above, that Gerdes could generate a genuine issue of material fact as to perceived disability, he would still be required to show that he is, or raise a genuine issue of material fact as to whether he is, a "qualified individual with a disability" in order to invoke protection under Title I of the ADA and defeat Armour's motion for summary judgment. 42 U.S.C. § 12112(a); *Benson v.*

*Northwest Airlines,* 62 F.3d 1108, 1111 (8th Cir.1995). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, *can perform the essential functions of the employment position* that such individual holds or desires." 42 U.S.C. § 12111(8) (emphasis added); *see Benson,* 62 F.3d at 1111–12; *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995) (citing this definition from the ADA); *Tyndall v. National Educ. Ctrs.,* 31 F.3d 209, 212 (4th Cir.1994); *and compare School Bd. of Nassau County v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987) (similar definition in Rehabilitation Act, 29 U.S.C. § 794(a)); *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979) (Rehabilitation Act definition). Similarly, the ADA reaches beyond protection of people with disabilities irrelevant to performance of their jobs by defining "discrimination" as including an employer's "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless … [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the … [employer's] business." *Vande Zande,* 44 F.3d at 541–42 (quoting 42 U.S.C. § 12112(b)(5)(A)). To put it another way, although the ADA prohibits discharge of a person "because of" a disability, an "employer may fire [an] employee because he cannot perform his job adequately, i.e., he is not a 'qualified individual' within the meaning of the ADA." *Hedberg v. Indiana Bell Tel. Co., Inc.,* 47 F.3d 928, 934 (7th Cir.1995) (citing 42 U.S.C. § 12111(8)). But before firing such an employee, the employer must consider whether "reasonable accommodation" can be made. *Id.; Vande Zande,* 44 F.3d at 542.

The Eighth Circuit Court of Appeals has formulated a two-pronged test of whether a person is "qualified" within the meaning of the ADA:

(1) whether the individual meets the necessary prerequisites for the job, such as education, experience, training, and the like; and (2) whether the individual can perform the essential job functions, with or without reasonable accommodation. *See* 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m) (1994); EEOC, A Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act II–11 to II–13 (1992).

*Benson,* 62 F.3d at 1111–12; *see also White,* 45 F.3d at 361–62 (applying a similar two-part test of "qualified"); *Tyndall,* 31 F.3d at 213 (same); *Chandler,* 2 F.3d at 1393–94 (same).

██ The court finds no party has challenged Gerdes's qualifications under the first prong of this test. However, Armour asserts that Gerdes cannot meet the second prong, because he could not perform the essential functions of his job owing to his work restrictions. Quite simply, Armour asserts that the restrictions imposed upon Gerdes by his doctor prevented him from working inside the Mason City plant, because working in the plant could have exposed to him to wide temperature variations (storehouses in excess of 100° and freezers at minus 10°), and contact with various fumes and chemicals, including liquid smoke, anhydrous ammonia, welding fumes, exhaust fumes, and other caustic agents and chemicals. Gerdes counters that he could perform, and has since April of 1996 performed, the essential functions of his job, because contact with the forbidden conditions is extremely rare. He contends that Armour's reliance on these limitations is a misinterpretation of the restrictions to justify his exclusion from the workplace. He contends that on those rare occasions when the forbidden conditions were present, he could have performed his job adequately by using a two-way radio to communicate with mechanics actually on site without being directly in the area. However, in reply, Armour cites Gerdes's own deposition testimony in which Gerdes purportedly conceded that he would not be doing his job if he just communicated by radio.

Gerdes's deposition testimony is critical here. The pertinent portion of the deposition is as follows:

Q [by Counsel for Armour]. Just as a matter of curiosity, George, I take it as a

good supervisor, that when there's a problem that is your responsibility in the plant, you go over, you see the problem, you analyze the problem, you tell the mechanic exactly what to do and how to repair it, you probably watch them somewhat, then you check it when it's done to make sure it's done properly; is that—

A [by Gerdes]. That's correct.

Q. Okay. And not one of those things could you do if you're communicating simply by radio, could you?

A. There's still some things we do by radio. I don't check every little job.

Q. No. Some things you could do by radio, but the fact of the matter remains, you would not be doing your job if you just communicate by radio?

A. That's right.

But we use the radio for things such as communicating and stuff.

Q. When you have finished a job, I need you to be over to Jay Shriver's office and fix this?

A. Or they'll call me. If they have a problem, I tell them what to do with the radio. Sometimes I never show up there to see what the problem is.

Q. But as a general proposition, George, do you not check to see the problem, analyze the problem, give instructions, give directions, and make sure the guy or woman does it right, and make sure it's—when it's over, it's safe for working?

A. That's right.

Q. Was your responsibility, among other things was [sic] to make sure that equipment is safe and is safely used by the employees at Swift–Eckrich?

A. That's the number one thing out there.

Q. That's number one. And you take that very seriously, do you not?

A. Yes, I do.

Q. And you're not going to allow a mechanic [sic] without you making sure it's done right to—to jeopardize the safety and health of people?

A. Right.

Q. And to do that, you have to see it?

A. Right.

Deposition of George Gerdes, pp. 168–69. In answer to the specific question, "[T]he fact of the matter remains, you would not be doing your job if you just communicate by radio?" Gerdes answered, "That's right." *Id.* at 169. The court does not believe that any reasonable inference could arise from this testimony that use of the radio would allow Gerdes to perform the essential functions of his job, even from the full context presented here.

Furthermore, Gerdes's assertion that there is a genuine issue of material fact as to the adequacy of use of a radio as an accommodation cannot be entertained in the face of his deposition testimony that use of a radio would not allow him to "do his job." This court has with some frequency considered the question of whether eleventh-hour affidavits that contradict deposition testimony can generate a genuine issue of material fact precluding summary judgment. *See Waitek v. Dalkon Shield Claimants Trust,* 908 F.Supp. 672, 684–686 (N.D.Iowa 1995) (the affidavit of an expert proffered in opposition to summary judgment motion was assertedly in conflict with the expert's prior deposition testimony, but the court found that the affidavit could generate genuine issues of material fact, because the expert explained the basis for his apparently changed opinion); *Kunzman v. Enron Corp.,* 902 F.Supp. 882, 896–98 (N.D.Iowa 1995) (holding that affidavits of two former co-workers would be considered and allowed to create a genuine or substantial factual issue, even though the plaintiff stated in his deposition that he was unaware of the co-workers' knowledge, where the co-workers' affidavits specifically referred to a statement made in their presence and which the defendants had not challenged in any manner); *Rowson v. Kawasaki Heavy Indus., Inc.,* 866 F.Supp. 1221, 1229–31 (N.D.Iowa 1994) (holding that a belated affidavit could be considered where the affiant's memory was recently refreshed by photographs that he had not been shown during the deposition).[7] The general rule cited in

---

**7.** Additionally, the court has addressed this matter in an unpublished decision, *Postma v. First*

these decisions, based on the holding of the Eighth Circuit Court of Appeals in *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir.1983), is that an affidavit that is in direct contradiction of or inherently conflicts with prior deposition testimony by the affiant does not raise an issue of material fact, although an exception to the rule may be shown where the affiant explains apparent inconsistencies or demonstrates a reason for a change of heart.

Here, the genuine issue of material fact as to the reasonableness of using a radio as an accommodation is not even asserted on the basis of an affidavit explaining the conflict with Gerdes's deposition, but only in the written argument of counsel. Nor is there any attempt to explain the conflict between this assertion and Gerdes's deposition testimony. Consequently, any attempt to raise a genuine issue of material fact as to the reasonableness of use of radios as an accommodation must fail in the face of Gerdes's deposition testimony that he would not be doing his job if he just communicated by radio. *Camfield*, 719 F.2d at 1361. There is, therefore, no genuine issue of material fact as to Gerdes's inability to perform the essential functions of his job in the face of the work restrictions imposed by his doctor.[8]

### 3. Reasonable accommodation and "interactive process"

This court has also discussed the requirements for and explanations of "reasonable accommodation" under the ADA on more than one occasion. *See, e.g., Valentine,* 939 F.Supp. at 1394–96; *Muller,* 917 F.Supp. at 1407–08; *Hutchinson,* 883 F.Supp. at 392–93; *Fink,* 881 F.Supp. at 1372–73. However, the issue Armour asserts is dispositive here is not so much what is the nature of a "reason-

able accommodation," but who is responsible for the breakdown of the interactive process that should be followed to determine what accommodations are reasonable in the circumstances.

Two recent decisions from the circuit courts of appeals discuss the required process for determining what reasonable accommodation an employer must provide. In the more recent of these decisions, *Taylor v. Principal Fin. Group, Inc.,* 93 F.3d 155 (5th Cir.1996), the Fifth Circuit Court of Appeals wrote,

"In general ... it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed." 29 C.F.R. § 1630.9, App. (1995). Once such a request has been made, "[t]he appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability." 29 C.F.R. § 1630.9, App. (1995). In other words, the responsibility for fashioning a reasonable accommodation is shared between the employee and employer. 29 C.F.R. § 1630.9, App. (1995).

*Taylor,* 93 F.3d at 165. Similarly, the Seventh Circuit Court of Appeals has described this "interactive" process to determine "reasonable accommodation":

The employer has at least some responsibility in determining the necessary accommodation. The federal regulations implementing the ADA state:

To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should

---

*Federal Sav. & Loan Ass'n of Sioux City, IA,* No. 93–4058, at 16–21, 1995 WL 807082 (N.D.Iowa Mar. 27, 1995).

8. Gerdes also attempts to raise genuine issues of material fact as to his ability to perform his job with a reasonable accommodation of working fewer hours. However, this proposed accommodation would do nothing to alleviate his inability to work in the prohibited conditions in the Armour plant.

Furthermore, Gerdes's assertion of a genuine issue of material fact as to his ability to perform essential functions of his job with reasonable accommodations fails to the extent he attempts to raise a genuine issue of material fact that Armour misinterpreted the limitations imposed by his work restrictions. As is discussed more fully in the following section, which considers breakdown of the interactive process to determine accommodations, Gerdes failed to make any effort to dispel any misunderstandings Armour may have had about those restrictions.

identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(*o* )(3) (1995). But the regulations envision an interactive process that requires participation by both parties:

[T]he employer must make reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability.

29 C.F.R., pt. 1630, app.; *see also Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 677 (1st Cir.1995).

\*  \*  \*  \*  \*  \*

Neither the ADA nor the regulations assign responsibility for when the interactive process fails.

No hard and fast rule will suffice, because neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

*Beck v. Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135–36 (7th Cir.1996) (finding the disabled employee caused the breakdown of the interactive process by failing ever to clarify for the university exactly what action it needed to take). The question of who bears the responsibility for breakdown of the interactive process is one that may be decided on a motion for summary judgment. *Beck*, 75 F.3d at 1136–37 (summary judgment was properly granted in the employer's favor, because, on the record presented, the employee was responsible for the breakdown in the interactive process).

■ In this case, responsibility for causing the breakdown of the interactive process plainly rests with Gerdes. *Id.* at 1136 (the court should attempt to isolate the cause of the breakdown and then assign responsibility). First, the undisputed record demonstrates that Armour made reasonable efforts to determine the appropriate accommodation by regularly requesting information about or clarification of Gerdes's work restrictions. *See* 29 C.F.R., pt. 1630, app.; *Beck*, 75 F.3d at 1136; *Grenier*, 70 F.3d at 677. Those attempts to ascertain the nature of Gerdes's work restrictions occurred on October 3, 1994 (Defendant's Exhibit 2, letter from Johnson to Dr. Cookman); November 23, 1994 (Declaration of Alan Van Devanter); January 6, 1995 (Defendant's Exhibit 4, letter from Seydel to Dr. Cookman); January 30, 1995 (Defendant's Exhibit 5, letter from Robbins to Dr. Cookman); July 13, 1995 (Defendant's Exhibit 6, letter from Johnson to Gerdes); July 31, 1995 (Defendant's Exhibit 8, letter from Humphrey to Gerdes); October 24, 1995 (Defendant's Exhibit 11, memorandum to file of Steinke's visit with Gerdes); February 15, 1996 (Defendant's Exhibit 10, certified letter from Johnson to Gerdes). These requests either did not yield any response, or did not yield a response that clearly indicated it would be possible for Gerdes to return to work at the Mason City meat-packing plant. Armour points out that, although Gerdes asserts that his doctor told him he could return to work, Gerdes never passed that statement on to Armour. Dr. Cookman, Gerdes's physician who supposedly made that statement, testified in depositions that he could have made the restrictions clearer, and at one point, Dr. Cookman refused to provide any further information, because he did not wish to be bothered.

■ Gerdes attempts to generate a genuine issue of material fact based on the period he asserts was approximately a year during which Armour did nothing to clarify his restrictions. However, the record detailed above demonstrates that there was no period greater than approximately six months during which Armour did not request information on Gerdes's work restrictions or

medical condition. Furthermore, information concerning Gerdes's medical condition and the nature of appropriate work restrictions was uniquely available to Gerdes. As the Seventh Circuit Court of Appeals observed in *Beck*,

> Where the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the process.

*Beck*, 75 F.3d at 1136; *see also McAlpin v. National Semiconductor Corp.*, 921 F.Supp. 1518, 1524 (N.D.Tex.1996) (concluding that "researching the extent of a disability is not the sort of reasonable accommodation envisioned by the statute," thus rejecting the argument that the onus was on the employer to contact the plaintiff's physician to discuss and determine the plaintiff's actual medical condition and to inform the physician of the actual chemicals the plaintiff might come in contact with in the workplace to determine whether work restrictions would be violated). In this case, the undisputed record demonstrates that the missing information was of the type that could only be provided by Gerdes or his physician, *see Beck*, 75 F.3d at 1136,[9] and that Gerdes, his attorney, and his physician were not forthcoming with the information even though Armour may have exceeded its obligations by making frequent requests for clarification. *Cf. McAlpin*, 921 F.Supp. at 1524. The record also demonstrates that once Armour received an adequate clarification of Gerdes's work restrictions such that Armour could reasonably determine that Gerdes could work in the environment presented by the Mason City meat-packing plant, Armour acted on that information by reinstating Gerdes to a position as a maintenance supervisor. The court does not believe that the ADA was intended to penalize an employer who reads work restrictions strictly or literally, in the absence of other clarification, because such an employer is simply not acting on "myths" or "stereotypes," but upon a careful, if perhaps overly cautious, reading of actual restrictions imposed by a treating physician. *Wooten*, 58 F.3d at 385.

The court therefore concludes that summary judgment in Armour's favor is also appropriate on the ground that, on the undisputed record, Gerdes was responsible for the breakdown of the interactive process to determine reasonable accommodation, *Beck*, 75 F.3d at 1136–37 (responsibility for the breakdown of the interactive process can be amenable to summary determination), even if Armour perceived Gerdes to be disabled.[10]

## V. CONCLUSION

The court concludes that Armour's motion for summary judgment should be granted. First, Gerdes concedes that he is not disabled and the court finds that he has failed to generate a genuine issue of material fact that Armour regarded him as disabled. The restrictions on Gerdes's ability to work that Armour perceived were peculiar to the working environment of the plant, not to a wide range of jobs. However, the principal reasons summary judgment is appropriate in this case is that Armour's perceptions of Gerdes's limitations were not based on "speculation," "stereotype," or "myth," but upon a doctor's written restriction of Gerdes's physical abilities. Thus, the evil the perceived disability provision of the ADA was intended to prohibit is not present here.

9. Gerdes attempts to generate a genuine issue of material fact on the ground that Armour's own physicians had sufficient information from which Armour could have concluded that Gerdes could return to work, but either did not contact those physicians or did not ask them to make such determinations. In the first instance, this argument fails, because Armour was not required to make such an inquiry. *McAlpin*, 921 F.Supp. at 1524. In the second place, Armour's doctors did not impose the work restrictions, Gerdes's own physician, Dr. Cookman, did; thus, Gerdes is suggesting that Armour should have second-guessed or interpreted for itself the meaning of Dr. Cookman's restrictions. The court cannot read the ADA to impose such a requirement on an employer.

10. Because Gerdes was responsible for the breakdown of the interactive process to determine reasonable accommodation, the court need not reach Gerdes's argument that payment of long-term disability benefits was not a reasonable accommodation.

Next, Gerdes has failed to generate a genuine issue of material fact that, even if Armour perceived him to be disabled, he was qualified for the position of maintenance supervisor at the plant. Although no party contests Gerdes's qualification for the position by education, training, or experience, Gerdes could not perform the essential functions of his job with or without reasonable accommodation owing to his work restrictions. The court rejects Gerdes's assertion of a genuine issue of material fact as to the adequacy of use of two-way radios to supervise maintenance in hazardous environments, because that assertion is contrary to Gerdes's own deposition testimony, and Gerdes has not provided any explanation of the conflict between this assertion and his prior deposition testimony.

Finally, even assuming a perceived disability and qualification for the position in question, the court concludes that Armour is entitled to summary judgment, because, on the undisputed record, Gerdes is responsible for the breakdown of the interactive process to determine reasonable accommodation. The record reveals that the missing information was uniquely in Gerdes's possession and that Armour made repeated efforts to obtain clarification of Gerdes's medical condition and work restrictions, but Gerdes, his attorney, and his doctor were uncooperative.

Defendant's motion for summary judgment is therefore granted and this matter is dismissed in its entirety.

**IT IS SO ORDERED.**